UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOU GATTI,

    Plaintiff,

v.                                   Case No: 2:16-cv-728-FtM-29CM

HELEN F. GOODMAN, CLIFF GOODMAN, and TWIN PALMS RESORT, LLC,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendants' Motion to Dismiss Amended Complaint (Doc. #24) filed on December 19, 2016. Plaintiff filed a response in opposition (Doc. #28) on January 9, 2017, to which defendants' filed a reply on January 18, 2017 (Doc. #33). For the reasons stated below, the motion is granted.

**I.**

This matter arises out of a sales contract between plaintiff Lou Gatti ("Gatti") and defendants Helen F. Goodman ("Ms. Goodman") and Cliff Goodman ("Mr. Goodman" or collectively "the Goodmans") for the purchase of the Twin Palms Camp[1] (the "property" or "camp").

---

[1] The Court adopts the full legal description of the property provided in the Amended Complaint. (Doc. #23, ¶ 1.)

(Doc. #23, ¶ 1.) Gatti alleges that Ms. Goodman wrongfully refuses to convey legal title to the property to him pursuant to a sales contract and is marketing the property for sale for personal profit without the consent of Gatti. (Id. ¶ 2.)

The Amended Complaint alleges the following: On September 27, 1989, Gatti entered into the sales contract with Ms. Goodman for the purchase of the property on behalf of Twin Palms Inc. ("TPI"). (Id. ¶ 11.) Gatti was President of TPI since its incorporation on August 9, 1989. (Id. ¶ 18.) On May 25, 1990, the Vice President and Secretary of TPI resigned from his position in the corporation and assigned all powers, duties, and obligations to Gatti. (Id.) On September 16, 1996, TPI dissolved and Gatti is the successor-in-interest to TPI. (Id. ¶ 19.)

The contract between TPI and Ms. Goodman is attached to the Amended Complaint. (Doc. #23-1.) The contract provides that it is for the purchase of "the Twin Palms Camp, Recorded in #70869 O.R. Book 83, Page 196." (Id.; Doc. #23, ¶ 13.) Gatti alleges he paid $800,000 in the form of "three notes and respective payment schedules" to the note holders as agreed under the terms of the contract. (Doc. #23, ¶ 14.)

Upon execution of the contract, Gatti operated the camp for four years using his own staff. (Id.) Gatti occasionally employed Ms. Goodman and Mr. Goodman to work the camp. (Id.) After operating the camp for four years, the existing manager left and

2

Gatti hired Ms. Goodman as the new manager. (Id. ¶¶ 14, 20.) Over time, a personal relationship developed between Ms. Goodman and Gatti, and in consideration of Ms. Goodman's stewardship of the property and in anticipation of Ms. Goodman's ultimate adherence to the contract, Gatti allowed Ms. Goodman to retain some of the camp's profits without charging her rent. (Id. ¶ 14.) This resulted in Ms. Goodman receiving a benefit in excess of $600,000. (Id.)

During Ms. Goodman's management of the camp, Gatti maintained extensive contact with her and the staff and visited the camp frequently. (Id.) Gatti visited to inspect the property, meet with the Goodmans, and evaluate and observe the operation of the property. (Id. ¶ 20.) Gatti also assisted with the operation of the property by dealing with purchase, repair, and improvement costs. (Id. ¶ 21.) The Goodmans acknowledged Gatti's ownership of the property many times through conversations with Gatti and camp visitors. (Id. ¶¶ 22-23.)

The sales contract provides that Ms. Goodman was to convey the property by general warranty deed to Gatti. (Id. ¶ 15.) Gatti claims that despite his fulfillment of all of his obligations under the contract, Ms. Goodman failed to execute the general warranty deed. (Id.) In 2009, Ms. Goodman transferred the property to

Twin Palms Resort, LLC.[2] (Id. ¶ 16.) Ms. Goodman, as manager of Twin Palms Resort, LLC, retained full control of the property following the transfer. (Id.) According to Gatti, Ms. Goodman formed the Twin Palms Resort, LLC for the improper purpose of disguising her interest in the property. (Id.)

Gatti last visited the property on April 11, 2015. (Id. ¶ 24.) During that visit, Gatti informed the Goodmans of his intention to sell the property. (Id.) On April 8, 2016, Gatti learned that the Goodmans had started to market the property for sale on the Twin Palms Resort website. (Id. ¶ 25; Doc. #23-2.) Ms. Goodman did not notify Gatti of her intention to sell the property or obtain Gatti's authorization to do so. (Doc. #23, ¶ 26.) Gatti asserts that by listing the property for sale, the Goodmans have clouded his title on the property. (Id. ¶ 25.)

On June 10, 2016, Gatti sent separate letters to Ms. Goodman and Mr. Goodman requesting adherence to the contractual terms. (Id. ¶ 27; Doc. #23-3.) The Goodmans did not respond. (Doc. #23, ¶ 27.) Then, on June 14, 2016, through counsel, Gatti sent separate demand letters to Ms. Goodman and Mr. Goodman in an effort to compel adherence to the sales contract. (Id. ¶ 28; Doc. #23-4.) Gatti asserts that Ms. Goodman's subsequent refusal to

---

[2] This is a separate and distinct entity from Twin Palms Inc. – the dissolved Virginia company that is a party to the sales contract. (Id. ¶ 11 n.1.)

transfer legal title to the property constitutes a breach of the contract. (Doc. #23, ¶ 28.) On June 15, 2016, Gatti filed a notarized Memorandum of Agreement with the Clerk of the Circuit Court for Glades County, Florida which was recorded in the Official Records of Glades County, Florida at Book 328, Page 300. (Id. ¶ 29; Doc. #23-5.) The Memorandum of Agreement states that TPI and Ms. Goodman entered into a contract for the sale of the property, that TPI complied with all of its obligations pursuant to the contract, and gives notice of the existence of the sales contract and TPI's rights in the property. (Doc. #23-5.)

Gatti initiated this action on September 26, 2016 to protect his ownership interest in the property. (Doc. #1.) The Amended Complaint, the operative pleading before the Court, asserts the following claims: (1) Quiet Title to the Property against Ms. Goodman and Twin Palms Resort; (2) Unjust Enrichment against Ms. Goodman and Mr. Goodman; (3) Breach of Contract against Ms. Goodman; (4) Specific Performance against Ms. Goodman; and (5) Fraud against Ms. Goodman and Mr. Goodman. (Id.) On December 29, 2016, defendants filed a Motion to Dismiss the Amended Complaint asserting that the Amended Complaint is due to be dismissed because the Court lacks subject matter jurisdiction and plaintiff's claims are barred by the statute of limitations. (Doc. #24.) Defendants alternatively move for more definite statement. (Id.) Plaintiff responds that the Court has subject matter jurisdiction, the claims

5

are timely, and the claims are adequately stated. (Doc. #28.) Defendants oppose plaintiff's positions in their reply. (Doc. #33.)

**II.**

**A. Diversity Jurisdiction**

Subject matter jurisdiction is premised on the presence of a diversity of citizenship between the parties. (Id. ¶ 3.) District Courts have original jurisdiction over civil actions involving parties with diverse citizenship where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. This requires complete diversity, i.e., that every plaintiff is diverse from every defendant. Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1564 (11th Cir. 1994) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806)).

A motion to dismiss pursuant to Rule 12(b)(1) provides for dismissal of an action if the court lacks subject matter jurisdiction. A challenge to subject matter jurisdiction may come in the form of either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003). A factual attack challenges the existence of subject matter jurisdiction using materials extrinsic from pleadings, such as affidavits or testimony. Stalley ex. rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33 (11th Cir. 2008). In contrast, a facial attack requires the Court to determine whether the pleader

has sufficiently alleged a basis for subject matter jurisdiction. Id. Here, defendants present a factual attack on the Court's subject matter jurisdiction. (Doc #24, p. 2.)

Within the Amended Complaint, plaintiff alleges that the contract at issue was for $800,000. (Doc. #23, ¶ 14.) Plaintiff also alleges that he is an individual domiciled in Virginia, (id. ¶ 6), defendants Helen and Cliff Goodman are individuals domiciled in Glades County, Florida, (id. ¶¶ 7-8), and Twin Palms Resort, LLC is a Florida limited liability company conducting business in the state of Florida, (id. ¶ 9). Plaintiff states that Ms. Goodman is the sole member and manager of Twin Palms Resort, LLC. (Id. ¶ 10.)

Based on the allegations that the sales contract totaled $800,000 (id. ¶ 14), the Court is satisfied that the amount in controversy alleged in the Amended Complaint is sufficient to meet the diversity jurisdiction requirements. Further, a limited liability company is a citizen of any state of which a member is a citizen. Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020 (11th Cir. 2004). Here, plaintiff is domiciled in Virginia and defendants are all citizens of Florida, satisfying complete diversity of citizenship among the parties. (Doc. #23, ¶¶ 6-10.) Therefore, the Amended Complaint properly alleges complete diversity among the parties.

Defendants, however, present an Affidavit of Floyd Goodman, the alleged Former Vice President and Secretary of TPI, disputing the allegations regarding his resignation from TPI and any relinquishment of his interest in TPI's assets. (Doc. #24-1.) Because Floyd Goodman represents that he, a citizen of Florida, is also a successor-in-interest to TPI, complete diversity jurisdiction does not exist. (Doc. #24, p. 6.)

This action was brought by Gatti individually. (Doc. #23.) TPI is not a named party in this action, (id.), and Floyd Goodman has not moved to intervene or otherwise be a part of this action. Although the action was bought by Gatti individually, the underlying contract dispute involves the purchase of property by TPI and, as discussed infra, the proper party to these claims is TPI. Even if Gatti had brought this action on behalf of TPI, a dissolved corporation has no principal place of business and is deemed to be a citizen only of its state of corporation. Holston Invs., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1071 (11th Cir. 2012). Therefore even if TPI's citizenship were considered, TPI is a citizen of Virginia, the state it was incorporated prior to dissolution (Doc. #23, ¶ 11), and the citizenship of its directors are irrelevant. Therefore, the Court finds that it has subject matter jurisdiction and denies this portion of the motion to dismiss.

**B. Standing**

Defendants assert that Gatti lacks standing to bring this suit because he is not the sole successor-in-interest. (Doc. #24, pp. 4-6.) Defendants also claim that Gatti may not bring this action individually but must do so behalf of TPI. (Doc. #33, pp. 2-3.)

The Amended Complaint alleges the dispute arises from a sales contract between Ms. Goodman and Gatti. (Doc. 23 ¶ 1.) However, the contract attached to the Amended Complaint (Doc. #23-1) shows the parties to the contract as TPI and Ms. Goodman. <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)). Consequently, Gatti does not personally have a claim to the property. Gatti contends, however, that he has standing to bring the instant action because he is the sole successor-in-interest to TPI under Virginia Code § 13.1-755. (Doc. #28, pp. 7-8.)

Virginia state law provides, "[t]he termination of corporate existence shall not take away or impair any remedy available to or against the corporation . . . for any right or claim existing or any liability incurred, prior to such termination," and that such actions "may be prosecuted or defended *by the corporation in its*

9

*corporate name*." Va. Code Ann. § 13.1–755 (emphasis added). Gatti brought this action in his individual capacity. It was not brought in his capacity as director of TPI or in TPI's name. Thus, even though Gatti alleges that he is the sole successor-in-interest to TPI's assets, it is the corporation, and not Gatti, who must litigate the instant case. Arora v. Alemparte, No. 1:03CV00020, 2003 WL 21448877, at *1 (W.D. Va. June 23, 2003) (holding that under Virginia law, it is the corporation, and not the sole successor-in-interest, who must bring the claim). See also RBA Capital, LP v. Anonick, No. 3:08cv494, 2009 WL 960090, at *3 (E.D. Va. Apr. 8, 2009) (citing City of Virginia Beach v. Bell, 498 S.E. 2d 414, 418 (Va. 1998)); Katz v. Holland & Knight LLP, No. 1:08cv1137, 2009 WL 367204, at *4 n.11 (E.D. Va. Feb. 12, 2009) (expressing doubt that party can bring claim as successor-in-interest of dissolved corporation). Invocation of the Virginia dissolved-corporations statute does not create standing for Gatti. Therefore, because Gatti does not have standing in his individual capacity to pursue the legal rights and interests of TPI, defendants' motion to dismiss is due to be granted.

Gatti asserts Virginia law provides that "the properties and affairs of a corporation whose corporate existence has been terminated pursuant to [V.A. Code Ann. § 13.1.752(c)] shall pass automatically to its directors as trustees in liquidation" and as the sole shareholder, officer, and director he "has the power to

10

protect any right or claim that TPI had at the time of its dissolution." (Doc. #28, p. 8.) The provision cited to for this proposition provides that the properties and affairs of a corporation that has been dissolved for reasons set forth in Virginia Code § 13.1-752 shall pass to "its directors as trustees in liquidation." <u>Id.</u> § 13.1-752(c). Plaintiff has not brought this action in his capacity as trustee of TPI, he has brought it in his individual capacity.

The Court finds that plaintiff does not have standing to bring this action in his individual capacity.

Accordingly, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss Amended Complaint (Doc. #24) is **GRANTED** and the Amended Complaint (Doc. #23) is **dismissed without prejudice**.

2.  Plaintiff shall have fourteen (14) days from the date of this Opinion and Order to file a Second Amended Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of July, 2017.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

11