[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 18-11401 & 18-12534
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00728-PAM-CM

LOU GATTI,
as Trustee and President of Twin Palms, Inc.,
a dissolved Virginia corporation,
TWIN PALMS INC,
a dissolved Virginia corporation,

                              Plaintiffs - Counter
                           Defendants - Appellants,

versus

HELEN GOODMAN,
CLIFF GOODMAN,
TWIN PALMS RESORTS, LLC,

                             Defendants - Counter
                            Claimants - Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 17, 2019)

Before MARCUS, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Lou Gatti and Twin Palms, Inc., appeal the district court's grant of summary judgment to Appellees Helen Goodman, Cliff Goodman, and Twin Palms Resort in this property dispute case. Federal court jurisdiction is based on diversity. On appeal, Appellants argue that the statutes of frauds, limitations, and repose do not bar their claims and that therefore the district court erred in granting summary judgment in favor of Appellees, in awarding costs to them, and in dissolving the Notice of Lis Pendens. Appellees cross-appeal the denial of their motion for Rule 11 sanctions.

## I.  FACTS

In 1982, the property at issue was conveyed to Appellee Helen Goodman, who also worked at the fishing camp on the Property with her son, Appellee Cliff Goodman. In 1989, Appellant Lou Gatti, on behalf of Appellant Twin Palms, Inc. ("TPI"), entered into a written sales contract with Helen Goodman for TPI to purchase the Property, which required payments to Helen Goodman and to one of her sons and also the assumption of the balance of an existing mortgage on the Property (the Hunter mortgage). With respect to the payments to Helen Goodman, the contract included a handwritten "Note Payment Schedule" that provided for annual payments of $50,000 to Helen Goodman from 1989 to 1996. Title was to

2

be transferred to TPI when the refinancing was complete and the Hunter mortgage was paid off. Gatti made the first annual payment to Helen Goodman in 1989. After that payment, Gatti alleged that he and Helen Goodman orally agreed to modify the agreement. Although he could not recall the specific terms or the date of modification, Gatti asserted that under the oral agreement, he "allowed Helen to operate the camp, keep the profits of the camp and pay the [mortgage] and the taxes." The oral agreement was never memorialized in writing.

Beginning in 1993, Helen Goodman took over management of the camp. She paid the taxes and made several of the mortgage payments (which was paid off by 2001). The utilities and licenses remained in her name. Gatti testified that he "told her to pay herself what she thought that was fair." Goodman testified that because the property and liquor license remained in her name, she felt that she could not leave the Property. The record contains evidence that Gatti intermittently paid Appellees, but no one could recall what the money was for.

TPI dissolved in 1996. In 2009, Helen Goodman transferred ownership of the Property to Appellee Twin Palms Resort, LLC, of which she was the sole owner. In 2013 and 2015, Gatti sent Helen Goodman letters offering to sell the Property back to her but she did not respond to either letter. Then, in 2016, Gatti discovered that Appellees had listed the Property for sale on the Internet, and he

3

demanded that they remove the listing and convey the Property to him. On September 26, 2016, Appellants sued Appellees.

Appellants' operative complaint included the following claims: (1) quiet title; (2) unjust enrichment; (3) breach of contract; (4) specific performance; (5) fraudulent misrepresentation; (6) fraud by omission; (7) negligent breach of fiduciary duty; and (8) intentional breach of fiduciary duty. The district court issued an order on March 23, 2018, granting summary judgment to Appellees after determining that Appellants' claims relied on an unenforceable oral agreement in violation of the statute of frauds. The district court also determined that the claims for quiet title, unjust enrichment, breach of contract, specific performance, and negligent and intentional breach of fiduciary duty were barred by the various applicable statutes of limitations, and that Appellants' fraud claims were barred by the statute of repose. In its order, the court also dissolved the Notice of *Lis Pendens* Appellants had filed against the Property. The court also denied the Appellees' motion for Rule 11 sanctions, reasoning that although the Appellants' claims were not successful, they were not frivolous, as is required for sanctions.

## II. DISCUSSION

We review *de novo* a district court's decision to grant summary judgment, drawing "all reasonable inferences in the light most favorable to the non-moving party." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary

judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986) (quotation marks omitted).

A. <u>Appellants' Issues on Appeal</u>

Appellants present two arguments on appeal. First, they argue that the district court erred in holding that the alleged oral modification of the sales contract was unenforceable pursuant to the statute of frauds. They argue that the district court erred in conflating Appellants' reliance on the doctrine of waiver as set out in *Gilman v. Butzloff*, 22 So.2d 263 (Fla. 1945), with the Florida law that promissory estoppel is not an exception to the operation of the statute of frauds. Second, Appellants argue that the district court erred in holding that the Florida statutes of limitations and statute of repose bar their claims.

*1. Statute of Frauds*

Florida law requires contracts that cannot be performed within a year to be in writing. *See* Fla. Stat. § 725.01.[1] "[T]o be within, and thus barred by, the provision in the statute of frauds concerning agreements 'not to be performed

---

[1] Fla. Stat. § 725.01 provides:
> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

5

within the space of one year from the making thereof,' it must be shown that neither party's performance was intended to be complete within one year." *Lundstrom Realty Advisors, Inc. v. Schickedanz Bros.-Riviera Ltd.*, 856 So.2d 1117, 1122 (Fla. 4th DCA 2003) (quoting *Fla. Pottery Stores of Panama City, Inc. v. Am. Nat'l Bank*, 578 So.2d 801, 804 (Fla. 1st DCA 1991)). "The statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection." *LaRue v. Kalex Constr. & Dev., Inc.*, 97 So.3d 251, 253 (Fla. 3d DCA 2012) (quoting *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 344 (1937)).

As Appellants acknowledge, Florida courts have held that promissory estoppel cannot be used to overcome the statute of frauds. *See DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So.3d 85 (Fla. 2013). However, in *DK Arena*, the Florida Supreme Court noted that the doctrine of waiver was still available as a defense to the statute of frauds including in the context of delayed performance. *Id.* at 98. However, it held that the holding of the court below did not support application of the waiver doctrine because "[t]he instant case did not involve a simple delay in performance, but rather concerned an agreement which created an extended due diligence period, under which EB held an unqualified right to terminate the contract. This modification was unenforceable due to operation of the Statute of Frauds." *Id.*

6

Appellants argue that the district court erred when it held that promissory estoppel was not available to defeat the statute of frauds defense because their argument was instead based on the waiver doctrine. However, the alleged oral modification here was not a simple delay in performance but created an entirely new payment structure. Gatti testified that under the oral agreement, he no longer had to make the annual payments but instead that his payment obligations would be satisfied in that Goodman would operate the camp, keep the profits and pay the expenses, and that she should pay herself a reasonable salary. As in *DK Arena*, the alleged oral modification here was far different from the simple delay in performance which *DK Arena* suggests might be pursuant to waiver.

Moreover, the oral agreement upon which Appellants rely to support waiver falls far short of the kind of delayed performance which *DK Arena* suggests might warrant application of the waiver doctrine—i.e. "if the plaintiff has been caused to delay his performance beyond the specified time by request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay." *Id.* (quotation and citation omitted). Finally, the facts in this case fall far short of the waiver doctrine as described in *Gilman*: "'We have held that waiver is the intentional relinquishment of a known right . . .. It is necessary that the acts, conduct, or circumstances relied upon to show waiver should make out a clear case." 22 So.2d at 26 (internal quotations and citations omitted).

7

For the foregoing reasons, Appellants could not rely on the doctrine of waiver under Florida law to excuse the lack of written memorialization of the modification.

2. *Statutes of Limitations and Statute of Repose*

None of the several applicable statutes of limitations at issue in this case allow more than five years.[2] Appellants filed suit in 2016. Appellees argue that all of Appellants' claims accrued, at the latest, in 2001, which would of course mean that the statutes of limitations would have long ago expired. Unless Appellants can persuade us that the several causes of action did not accrue until 2016 (the only other date Appellants suggest), their claims would be barred. Thus, we turn to the crucial issue of accrual.

Under Florida law, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues," Fla. Stat. § 95.031, and "[a] cause of action accrues when the last element constituting the cause of action occurs," Fla. Stat. § 95.031(1).

> The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not

---

[2] Claims for quiet title, unjust enrichment, fraud, and breach of fiduciary duty have four year statutes of limitation. *See* Fla Stat. § 95.11(3)(a), (j), (k), (p). Breach of contract claims must be filed within five years. *Id.* § 95.11(2)(b). Only one year is allowed to bring a claim for specific performance. *Id.* § 95.11(5)(a).

> postponed by the fact that the actual or substantial damages do not occur until a later date.

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So.2d 859, 862 (quoting *City of Miami v. Brooks*, 70 So.2d 306, 308 (Fla. 1954)).

Appellants argue that the district court erred when it set 2001 as the last possible date that their claims could accrue. The district court had reasoned that 2001 was the proper time for the accrual of the claims because that is when all of Appellants' obligations were completed. That is, their last annual payment to Helen Goodman was due October 1, 1996, and their last-in-time obligation under the original written sales contract was the final payment on the Hunter mortgage, which was in 2001. Thus in 2001, Appellants were entitled under the sales contract to have the title to the Property transferred to them. The district court reasoned that Appellants could not delay the accrual by their unilateral failure to seek transfer of the title after all of the other contractual obligations had been met. We agree. As the district court stated, this would defeat the purpose of statutes of limitations. "'[H]ow resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories.'" *Allie v. Ionata*, 503 So.2d 1237, 1240 (Fla. 1987) (quoting *Nardone v. Reynolds*, 333 So.2d 25, 36 (Fla.1976)). This case presents a classic example. Under either the original sales contract or the alleged oral

9

agreement, all of Appellants' payment obligations would have been satisfied as of 2001, and Appellants would obviously expect the contracted for transfer of title to take place.  Yet Appellants said nothing, waited almost fifteen years until 2016,[3] and then surprised Appellees with the vague alleged oral agreement asserted in this litigation. We agree with the district court's assessment that all of the claims derived from Appellants' failure to insist upon the required transfer of the deed in 2001, which started the clock.  We agree with the district court that Appellants' challenge in this suit comes too late.

Similarly, the district court did not err when it held that Appellants' fraud claim was barred by the statute of repose.  Under Florida law, fraud actions must be initiated "within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." Fla. Stat. § 95.031(2)(a).  Appellees' failure to transfer the title in 2001 started the clock for the statute of repose for fraud and thus Appellants' suit was too late.

In conclusion, Appellants' appeal fails for several reasons.  The oral agreement upon which they rely is unenforceable under the statute of frauds.  Moreover, their claims are all barred by the applicable statutes of limitations, and the fraud claims are also barred by the statute of repose.

---

[3]     There were no communications about the Property except for one letter in 2013—already more than 12 years after 2001 and to which Helen Goodman did not respond—which merely offered to resell the Property to Helen Goodman, but made no mention of the oral agreement.

10

B.  Appellees' Cross Appeal

Finally, the Appellees argue in their cross appeal that the district court abused its discretion when it declined to award sanctions against the Appellants. "A court's decision to deny sanctions under Rule 11, 28 U.S.C. § 1927, and the court's inherent power is reviewed for abuse of discretion." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).  In deciding whether to impose Rule 11 sanctions, a court asks "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware they were frivolous."  *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The district court did not abuse its discretion when it did not award sanctions.  Although the Appellants ultimately were unsuccessful, their claims were not disposed of so easily as to make them frivolous.

The judgment of the district court is affirmed in all respects.

AFFIRMED.